UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


EnergyNorth Natural Gas, Inc.

    v.                            Civil No. 99-cv-049-JD

Century Indemnity Company, et al.


O R D E R


    The defendants have filed two motions in limine to exclude
the expected testimony of five witnesses and four photographs,
asserting that the evidence is not relevant and is inadmissible
character evidence.  ENGI objects to the motions on the grounds
that the motions are untimely and the evidence is relevant.
Whether or not the motions are timely, the issues raised will
have to be addressed either through a motion in limine or at
trial.  It would appear to be more convenient for both parties as
well as the court to resolve as many evidentiary issues as
possible before trial.


I.   Testimony of Ronald DeManche, Mona Paquette, and Marie
    Paquette and Photographs

    Evidence is relevant only if it has "any tendency to make
the existence of any fact that is of consequence to the
determination of the action more probable or less probable than
it would be without the evidence."  Fed. R. Evid. 401.  The
defendants argue that testimony of Ronald DeManche, Mona

Paquette, and Marie Paquette at their depositions shows that they
do not have relevant evidence so that they should not be
permitted to testify at trial.  The defendants contend that the
four photographs of the gas plant site, which Marie Paquette
produced, are also irrelevant.  ENGI asserts that the testimony
of those witnesses and the photographs are relevant to refute the
defendants' theory that Gas Service, Inc., intentionally
discharged wastes and byproducts from the manufactured gas
process at or near the plant site.

A.  Ronald DeManche

Demanche was born in 1956 and lived near the gas plant site
until he was a teenager.  In his deposition, Demanche said that
when he was between seven and nine years old, he would cut across
the gas plant site in the summer to reach a favorite fishing
spot.  He testified that he did not see coal, coal tar, oil, or
staining when he walked across the site; he did not notice
smells, sewers, or any drains into the Nashua River, and he did
not see any oil or tar in the river.

The defendants point out that the plant had ceased
manufactured gas operations before DeManche was born.  During the
time he walked across the site, between 1963 to 1965, the plant
was not manufacturing gas.  Therefore, DeManche's testimony about
what he saw and smelled at the plant site has little, if any,
relevance to the issue of what occurred at the plant site during

2

its operations before 1952.  Given the meager evidentiary value
of the evidence, the risk of unfair prejudice due to possible
confusion about the dates of his observations or the import of
observations made more than a decade after gas manufacture had
ceased, outweighs the probative value of DeManche's testimony.

     B.  <u>Marie Paquette</u>

     ENGI argues that Marie Paquette's testimony is relevant to
the issue of whether there was intentional dumping of tar at the
plant site during the time it was operating.  Paquette lived next
to the gas plant site, beginning in 1940.  Her father worked at
the plant from 1923 to 1967.  She would visit the gas plant site
to bring her father his lunch, and she remembers the route she
took across the site.  During those visits, she did not see tar,
and her father did not have tar on his shoes from the site.
Paquette also states that neither her father nor other plant
employees, whom she knew, ever spoke of dumping or discharge of
tar at the site.  She testified that her father had a flower and
vegetable garden on the plant site, where he grew carrots and
tomatoes.  She produced a picture of the garden, along with three
other pictures of the plant site.

     The defendants argue that in the course of her deposition,
Marie Paquette disavowed any knowledge about her father's job at
the gas plant, what went on at the plant, or what was happening
at the site.  They contend that because of Paquette's limited

3

observations at the plant and her stated disinterest, her
testimony would have little probative value.  While that may be
true, she did visit the plant during the pertinent time period.
The weaknesses in her testimony can be developed through cross
examination.

    C.  <u>Photographs</u>

    The defendants object to the photographs that Marie Paquette
produced as irrelevant.  Three of the photographs show workers in
the plant yard and one photograph shows tomatoes growing near a
brick building on the plant site.  The defendants contend that
the photograph of the garden cannot be used to show that the
ground was fertile or uncontaminated because there is no evidence
that the tomatoes were actually edible.  They contend that the
other three photographs show workers at the plant site without
any relevance to whether or not the site was contaminated.  The
defendants also argue that the photographs lack a time frame or
information about their location on the plant site.

    ENGI points out that Marie Paquette testified that the
garden photograph was taken around 1945.  One of the photographs
is dated, indicating "7/43."  Therefore, the time frame is
reasonably established.  ENGI also contends that Paquette will be
able to provide an adequate foundation for the photographs at
trial.  ENGI further argues that the photographs are relevant
because they show a view of the plant site during the relevant

4

time period.  The photographs will be admissible if Marie
Paquette is able to provide a sufficient foundation for them.


    D.  <u>Mona Paquette</u>

    Mona Paquette is Marie Paquette's daughter and lived close
to the plant site.  ENGI argues that her testimony that her
grandfather never told her of intentional dumping of tar, that no
one else ever indicated that there had been intentional dumping
at the plant site, and that she never saw any tar at the site is
relevant to refute the defense that intentional dumping occurred
at the site.

    The defendants point out that Mona Paquette was born in
1961, years after the plant stopped manufacturing gas.  Like
Ronald DeManche, she walked across the site to get to a fishing
spot.  She remembers little about the site or about her
grandfather's work there.  Mona's testimony about the plant site
is inadmissible because it does not relate to a pertinent times
or events.


II.  <u>Character Evidence</u>

    The defendants object to the expected testimony of Linda
Labaree and Leonard Abood and other evidence as impermissible
character evidence.  Linda Labaree is the daughter of Charles
Prichard, Jr., former president of Gas Service, Inc.  Leonard
Abood was an employee at the plant while Prichard was president.

Federal Rule of Evidence 404(a) limits the use of evidence of a person's character or a character trait to circumstances that are not applicable to this case.  Rule 404(b) excludes evidence of other acts to prove character for the purpose of showing that the person acted in conformity to that character. The defendants believe that ENGI will attempt to introduce the testimony of Labaree and Abood, along with other evidence, to show Prichard's good character, in order to counter the evidence that Prichard intentionally discharged tar during the demolition of plant facilities in 1969.

ENGI contends that character evidence about Prichard is admissible because his intent is at issue in this case with respect to the expected testimony that he told a contractor to discharge tar and let it run down toward the river.  ENGI characterizes Labaree's anticipated testimony to be directed toward her father's devotion to and competence in running the gas business and his commitment to the community and providing a utility product.  Those topics, however, do not address the issue of whether or not he would intentionally discharge tar onto the ground and let it run toward the river in the process of the demolition of certain plant facilities.  ENGI does not explain what character evidence it would introduce from Abood.  ENGI also does not identify any other evidence that it would introduce for the purpose of showing that Prichard did not intend to discharge tar during the 1969 incident.

6

The defendants also argue that Labaree has no factual information about plant operations and should not be permitted to testify about her memories of the plant or its operation.  Based on her deposition testimony, she visited the plant infrequently, no more than once a year, and her father never discussed plant operations with her, other than his concerns about labor issues. She could not identify any of the plant buildings in photographs. The only pertinent testimony about the plant site she offered is that she did not remember ever seeing staining on the ground or any oil or tar where she walked.

No testimony or evidence of Prichard's general good character, his concern for the community, his business acumen, or his relationships with one or more employees will be allowed for the purpose of countering the evidence that he intentionally discharged tar in 1969.  Labaree may testify about her factual memories of the plant site.

## Conclusion

For the foregoing reasons, the defendants' motions in limine (documents no. 326 and 327) are granted in part and denied in part.  Marie Paquette and Linda Labaree will be permitted to testify about their factual memories of the Nashua plant site, and the photographs will be admissible if Marie Paquette is able to provide a sufficient foundation for them at trial.  Leonard Abood and Linda Labaree are precluded from testifying about the

character of Charles Prichard, Jr.  The admissibility of Abood's

testimony about plant operations is not addressed here.  The

testimony of Ronald DeManche and Mona Paquette is excluded.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

October 25, 2005

cc:  John L. Altieri, Esquire
     Richard T. Apiscopa, Esquire
     Edmund J. Boutin, Esquire
     Doreen F. Connor, Esquire
     Bruce W. Felmly, Esquire
     Robert P. Firriolo, Esquire
     William P. Lalor, Esquire
     Lawrence A. Serlin, Esquire